## Chicago, Burlington and Quincy Railroad Company

*v.*

## The City of Aurora.

*Filed at Ottawa May 14, 1881.*

1. Municipal indebtedness—*to be incurred without a vote—but not by compulsion.* Under the constitution of 1848, the legislature could properly confer upon a city the power to incur indebtedness and issue its bonds for a corporate purpose, without any vote of the people, but it could go no further. It could not compel a city or incorporated town to incur a debt, unless the legislative department of the city or town saw proper to do so.

2. Same—*issue of bonds with conditions.* Where an act conferring power upon a city council to incur an indebtedness and issue its bonds therefor, is silent in regard to the time when the bonds shall be made payable, and in regard to the terms and conditions upon which they shall be payable, such matters will be left to the city and the person to whom the bonds are to be issued, to be settled, and when agreed to, the city may make the payment of such bonds depend upon conditions mutually assented to.

3. Bonds—*when part of condition is void.* Where a bond contains two conditions, one authorized by law and good, and the other unauthorized and bad, and the conditions are in their nature severable, the latter may be rejected and the other held good and the bond sustained.

4. The city of Aurora, under an act of the legislature authorizing it to issue its bonds as a donation to a railway company to secure the location of its machine shops in the city, passed an ordinance for the issue of such bonds, to be conditioned that both the principal and interest should be paid out of moneys to be raised by special tax, to be levied and collected of property in the east division of the city, and that if such a tax could not be legally assessed, the obligees should procure the passage of a law authorizing the levy of such a special tax, and that if any of the conditions were not fulfilled, the bonds should be void. Under this ordinance the city issued her bonds, conditioned as the ordinance required. It was contended by the holder of the bonds, that the condition being void, for the reason the city could not, under the constitution, levy and collect a special tax except over *its entire* territory, therefore the bonds were payable as though there was no condition: *Held,* that the conditions were such as the city had the right to impose, and it being the intention of the parties that they should not be obligatory if the conditions could not be performed, the bonds were not collectible.

5. Contracts—*construction.* In the construction of all written contracts, the controlling consideration always is to arrive at the intent of the parties,

and in doing this, every part of the instrument is to be considered and properly weighed. So, the condition of a bond may be considered to explain the obligatory part.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Kane county; the Hon. HIRAM H. CODY, Judge, presiding.

Mr. CHARLES WHEATON, for the appellant:

A donation in aid of a railroad company is for a corporate purpose, which the legislature may authorize. *Prettyman* v. *Tazewell Co.* 19 Ill. 406; *Robertson et al.* v. *City of Rockford et al.* 21 id. 452; *Johnson* v. *Stark Co.* 24 id. 85; *Perkins et al.* v. *Lewis et al.* 24 id. 208; *Keithsburg* v. *Frich*, 34 id. 405; *L. M. and. P. Railroad Co.* v. *Morris*, 84 id. 410; *Supervisors, etc., of Hensley* v. *The People ex rel.* id. 544; *Burt et al.* v. *Carbondale*, 76 id. 455; *Chicago, Burlington and Quincy Railroad Co.* v. *Wilson*, 17 id. 123.

As to the legislative control over the funds and revenues of municipal corporations, see *Dennis* v. *Maynard et al.* 15 Ill. 477; *Schofield et al.* v. *Watkins et al.* 22 id. 66; *Bush* v. *Shipman et al.* 4 Scam. 186; *Shaw* v. *Dennis*, 5 Gilm. 405; *The People ex rel.* v. *Power*, 25 Ill. 187; *Supervisors of Sangamon County* v. *Springfield*, 63 id. 66.

An illegal, repugnant or improper condition in a bond will be rejected. *Wells* v. *Ferguson*, 2 Salk. 463; *Mauleverer* v. *Hawxby*, 2 Saund. 79.

If the condition of a bond be insensible or void, the bond will be single. *Butler* v. *Wigge*, 1 Saund. 66; *Pullerton* v. *Agnew*, 1 Salk. 172; *Erlinger* v. *The People*, 36 Ill. 458; 7 J. J. Marsh. 192; *Conner* v. *Paxson*, 1 Blackf. 208; *State* v. *Findley*, 10 Ohio, 51; *Benjamin* v. *McConnel*, 4 Gilm. 536.

Mr. A. G. McDOLE, and Mr. EUGENE CANFIELD, for the appellee:

Under the constitution of 1848, the legislature could not compel a municipal corporation to incur a debt for merely

local purposes against its own wishes. *Hessler* v. *Drainage Comrs.* 53 Ill. 110; *Livingston* v. *Wider,* id. 302; *Marshall et al.* v. *Silliman et al.* 61 id. 218; *Harward* v. *St. Clair and Monroe Levee Drainage Co.* 51 id. 130; *The People ex rel.* v. *Mayor of Chicago,* id. 30; *Wiley et al.* v. *Silliman et al.* 62 id. 170; *Ryan* v. *Lynch et al.* 68 id. 160; *Cairo and St. Louis Railroad Co.* v. *City of Sparta,* 77 id. 505; *Middleport* v. *Ætna Life Insurance Co.* 82 id. 552; *Barnes* v. *Town of Lacon,* 84 id. 461; *Town of Elmwood* v. *Marcy,* 92 U. S. 289.

The city, by assuming to issue bonds under the special act of 1867, was not prohibited from issuing them with conditions. *Penobscot Railroad Co.* v. *Dunn,* 39 Me. 589; *Chamberlain* v. *Ashtabula Railroad Co.* 15 Ohio St. 225; *Ashtabula Railroad Co.* v. *Smith,* 15 id. 328; *Leconic Water Power Co.* v. *Long,* 63 Me. 480; *Philadelphia Railroad Co.* v. *Hickman,* 28 Pa. St. 318; *Taylor* v. *Fletcher,* 15 Ind. 80.

Mr. Justice Craig delivered the opinion of the Court:

This was an action of debt, brought by the Chicago, Burlington and Quincy Railroad Company, on twelve bonds, of $1000 each, issued by the city of Aurora on the 4th day of December, 1867, payable to Isaac M. Howell and Edward R. Allen, and by them indorsed to the plaintiff.

The $12,000 for which the bonds were issued was a donation by the city of Aurora to the railroad company, in connection with $50,000 donated by the town of Aurora, to be used in the purchase of thirty acres of land in the city of Aurora, upon which the shops of the railroad company were to be, and subsequently were, permanently located. These donations the railroad company required of the town and city as a condition to the permanent location of the shops at that place.

It appears that in the spring of 1867 the town of Aurora had agreed to raise the said sum of $50,000 by taxation, and had issued orders for the amount, and as doubts were entertained as to the legality of the action taken

by the town, an act was passed at a special session of the legislature, on the 13th day of June, 1867, confirming and legalizing the proceedings and action of the town in regard thereto. At the time of the passage of this act it was not definitely known whether the $50,000 would be sufficient to meet the required demands to secure the location of the shops, and to provide against such an emergency section 3 of the act declared:

"Section 3. That should the bonds already provided be insufficient to purchase the said estimated thirty acres of land, then the common council of the city of Aurora, in said town of Aurora, are vested with power, and it is hereby made their duty, to borrow such sums of money, or shall issue bonds therefor, with such interest as they may deem proper, not to exceed ten per cent per annum : *Provided, however,* as between the east and west divisions of said city, the said bonds and the interest thereon shall be chargeable out of the funds belonging to the east division ; and it shall be the duty of the common council of said city to keep the said funds of the east division sufficiently large to pay such bonds and the interest thereon, when the same shall mature: *Provided,* the whole amount of said bonds shall not exceed $15,000."

The bonds for $12,000, involved in this litigation, were issued by the city to Howell and Allen, under and in pursuance of this section of the act. After the bonds had been issued, doubts having arisen in regard to the power of the legislature at the special session under the call of the Governor, to pass section 3 of the act, on the 3d day of March, 1869, the legislature passed another act legalizing and confirming the first named act, and also the action of the city in issuing the bonds.

It is claimed that section 3 of the act of 1867 is invalid, for the reason that it was passed at a special session of the legislature, and it was not included in the Governor's proclamation as one of the subjects upon which that body was called in special session to act. In the view we have taken

of the case it will not be necessary to consider this question, and we shall not, therefore, consume time in its discussion.

The bonds upon which the action was brought were in the following form:

" *Know all men by these presents,* That the city of Aurora is held and firmly bound unto Isaac M. Howell and Edward R. Allen, to pay to said Howell and Allen the sum of $1000, lawful money of the United States of America, three years after date hereof, with interest at the rate of ten per cent per annum, the first year's interest to be paid on the first day of March, A. D. 1879, and annually thereafter on the first day of March in each year, until this bond is paid.   For the payment, well and truly to be made, the said city of Aurora binds itself and its successors firmly by these presents: *Provided, however,* and these presents are upon these express conditions, that the principal and interest of the above bonds shall be paid out of funds raised by special taxes levied and collected out of property situate and being in the east division of said city of Aurora, and under no circumstances shall they ever become a lien upon property situate in the west division of said city of Aurora: *And, provided, further,* upon the express condition that both principal and interest of the above shall be paid out of moneys raised by special tax levied and collected upon property in the east division of said city of Aurora only: *And, provided, further,* conditioned that if such special tax can not be legally assessed upon the property in said east division under the existing laws, the said Allen and Howell shall secure the passage, by the legislature of the State of Illinois, of a law authorizing the levy and collection of such tax on the property in said east division to pay the above bond, with the interest thereon ; and said Allen and Howell receive said bond upon the above conditions, and no other: *Provided,* that if any of the conditions in the above bond shall not be fulfilled, then and in that case the same shall be null and void, and of no effect.

14—99 Ill.

"Witness, Robinson L. Carter, mayor of said city of Aurora, and the corporate seal thereof, attested by the city clerk this fourth day of December, A. D. 1869.

[CORPORATE SEAL.]                    R. L. Carter,
                              *Mayor of the City of Aurora.*
*Attest:* H. F. VanNortwick, *City Clerk."*

On the back is indorsed:

"We do hereby assign the within bond to the Chicago, Burlington and Quincy Railroad Company.

                              Isaac M. Howell,
                              Edward R. Allen."

The bonds were issued under and by virtue of an ordinance passed by the city of Aurora on the 2d day of December, 1867. The ordinance empowers the mayor to issue the bonds, under the seal of the city, but requires the conditions which were inserted to be incorporated therein, as conditions upon which the city shall only be compelled to pay the same. On behalf of the defendant it is contended, that the conditions contained in the bonds constitute a complete defence to the action, while the plaintiff insists that the conditions are illegal and repugnant to the bonds, and may be rejected and the bonds collected.

While section 3 of the act of 1867, *supra,* confers the power on the city to incur the indebtedness and issue its bonds to an amount not exceeding $15,000, yet it did not require the city to do so unless it saw proper to incur the liability. It is true, the section declares that "it is hereby made their duty to borrow such sums of money, and issue bonds therefor." That provision in the act was nugatory, as the legislature had no constitutional power to compel a city or incorporated town to incur a debt unless the legislative department of the city saw proper to do so. The legislature could properly confer the power on the city to incur the indebtedness and issue its bonds for a corporate purpose, without a vote of the voters of the city, but it could go no

further.   After the power had been conferred, it was a matter entirely within the discretion of the city whether it would incur the debt and issue its bonds, or not.   The city of Aurora, then, having the power to act or not under the authority conferred by section 3 of the act, if it did act, was it compelled to issue its bonds payable without conditions or any limitations whatever, or had it the right, if it saw proper to issue the bonds, to impose conditions upon which they would be payable?   It would seem that there could not be much controversy over this point.   The act conferring the power on the city is silent in regard to the time when the bonds shall be payable.   It is also silent in regard to the terms and conditions upon which they shall be payable.   Such being the case, it would seem to be reasonable that these matters were left for the city and the person to whom the bonds were to be issued, to be settled and determined by contract to be agreed upon by the parties.   This court has held, in a number of cases, and the law may be regarded as settled, that where a town is authorized to take stock in a railroad company upon a majority of the legal voters of the town voting in favor of the proposition, the town may, in determining the question of subscription, impose any conditions in respect thereto that it thinks proper.   *The People* v. *Dutcher*, 56 Ill. 144;  *The People* v. *County of Tazewell,* 22 id. 147;  *The People* v. *Glann,* 70 id. 232;  *Alley* v. *Adams County,* 76 id. 101.

If a town may impose conditions when it has been authorized by a vote to take stock and issue bonds, upon the same principle a city may do the same thing, as they both stand upon the same footing, so far as settling the terms of the contract is concerned.   We are, therefore, of opinion that the city of Aurora had the power to issue bonds with or without conditions, as might be agreed upon between the city authorities and the persons to whom the bonds were to be issued and delivered.

But it is said, the conditions incorporated in the bonds in question are illegal, repugnant to the obligatory part of the bonds, and may be rejected, and the instrument stand as a single bond, without conditions. It is doubtless true, that under our present constitution the city of Aurora has no power to levy and collect taxes for the payment of the bonds from only such property as is situated in the east division of the city. A tax for a corporate purpose, before it can be enforced, must be uniform, and embrace all the property within the limits of the city. No discrimination whatever can be made. The law was the same under the constitution of 1848. *Primm* v. *City of Belleville,* 59 Ill. 142.

But has a court the right, in the construction of these bonds, to disregard the conditions because taxes can not be collected legally from property situated in the west division of the city? There are cases which hold that the conditions of a bond may be in part void and in part valid, if they are severable, one from another. If the valid and void conditions are incapable of severance, then the bond would be wholly bad. Such is *Erlinger* v. *The People,* 36 Ill. 458, cited by plaintiff. The same principle is announced in *State* v. *Findley,* 10 Ohio, 54, cited by plaintiff, where it was held, that a bond given by a county treasurer, the condition of which is that he shall faithfully and impartially discharge all the duties of the office, is a good statutory bond for so much as is prescribed by the statute and comprehended in the condition, even though it be void for the residue. These cases do not, however, reach the question involved here. We do not doubt that at common law or under the statute, where a bond contains two conditions, one authorized by law and good, and the other unauthorized and bad, the latter may be disregarded and rejected, the others held good and the bond sustained.

We have also been referred to *Butler* v. *Wigge,* 1 Saunders, 65, and *Mauleverer* v. *Hawxby,* 2 id. 78, as authorities to control here. The first case cited was an action on a bond which was conditioned "that if the defendant should stand to

and abide by the award of two arbitrators of all actions, etc., so that the award be made on or before the 23d day of January, but if the arbitrators'shall not agree upon their award, that then they shall choose and elect an indifferent man, and they shall stand to his final determination and judgment, which he shall give and determine on or before the 28th of January, under his hand and seal, that then this obligation shall be void," etc.   It was resolved by the court that the condition was good enough, though it was not so properly expressed as it should be, and that the defendant had forfeited his bond by the non-performance of the award of the umpire, and they said that any words by which the intention of the parties can appear are sufficient to make a condition of an obligation, for if the words, though they are improper, should be construed void, and not a condition, then in many cases, and perhaps in this very case, the obligation would be single and of force against the defendant, although he has performed the conditions of it according to the intention of the parties.

The case in 2 Saund. was also an action on a bond, which contained this condition:  "The condition of this obligation is such, that if the above bound Wm. Merkenfield be and appear before our said lord, the King, at Westminster, on Saturday next, after the octave of St. Martin, to answer John Booth of a plea of trespass,   *   *   *   then the *condition* of the obligation to be void and of none effect, or else the same to be in full power and virtue."   On demurrer to the declaration it was resolved by the court that the bond was good enough; for the words "then the condition," etc., are void for their absurdity and repugnancy, and no more regard is to be paid to them than if they had been omitted, and they must be taken in the same sense as if the words had been "then this obligation shall be void."   While it may be very proper to reject repugnant words; as was done in the case last cited, yet it is manifest such a decision can not be re-

garded as an authority to reject the entire condition of such a bond as the one in question.

Other cases of a similar character have been cited, but it will serve no useful purpose to refer to them here. They are predicated on a state of facts so different from the case under consideration, that they can not control.

The ordinance under which the bonds were issued, which provided that the bonds should contain the conditions which were incorporated therein, was drafted by the attorney of the plaintiff, and he and the obligees in the bonds urged its passage by the city council of Aurora. In addition to this fact the conditions in the bonds were fully known and assented to by the obligees. No unfairness of any sort was practiced by the city, but on the other hand, these bonds, with these conditions, were entirely acceptable to the obligees, and the railroad company, for whose benefit the bonds were in the first instance taken.

Under such circumstances, upon what principle can the obligees of the bonds urge that all the conditions shall be rejected, and the bond treated as a single instrument without conditions? It is certainly not right that such a construction should be given, and it will not be done unless the law is clear and explicit to that effect, which we do not find to be the case. In the construction of all written contracts, the controlling consideration always is to arrive at the intent of the parties, and in doing this, every part of the instrument is to be considered and properly weighed. The condition of a bond may be considered to explain the obligatory part. 2 Parsons on Contracts, 503; *Allen* v. *Morrison,* 8 B. & C. 565.

Under this rule there is no ground for rejecting the entire conditions of these bonds. The conditions were inserted for the benefit of the obligor. It is the part of the contract upon which the city relied when the bonds were issued. The conditions may be regarded as the agreement of the obligees, and, as held in *Butler* v. *Wigge, supra,* should be construed favorably for the advantage of the obligor. In issuing the bonds

the city of Aurora, as it had the right to do, relied on the conditions, and if the law is such that they can not be performed, that is plaintiff's misfortune, for which no blame whatever can attach to the city. It acted in good faith in the matter, entertaining a doubt, perhaps, in regard to its right to collect taxes to pay the bonds from a part, only, of the property of the municipality. The obligees, Allen and Howell, agreed in the bonds to remove the difficulty by procuring the passage of a law which would have that effect. Relying upon this agreement of the obligees, the city issued its bonds, and it can not be held liable to pay except the conditions are performed.

In *People* v. *Dutcher*, 56 Ill. 144, under a law authorizing a town to determine, by vote, whether it would subscribe to the capital stock of a railroad company, and requiring the town supervisor to make the subscription if it should be so voted, it was held, in determining the question of subscription, the town may impose any conditions it may think proper. It is there said: "It is true the law has failed to authorize conditions to be imposed by the voters, but it has not prohibited their imposition. It is not, nor can it be, denied that an individual may or not subscribe to such a corporation, as he may freely choose, and he may impose any condition he desires to such a subscription, and it then is within the free choice of the company whether it will accept the subscription on the conditions. And the General Assembly has left it to the voluntary determination of the voters of the town to say whether they would subscribe for the stock or refuse to do so, by their vote. And if it was a matter of choice whether they would or not make such subscription, then why might they not impose any condition they desired, and when imposed, why should the company be at liberty to compel an unconditional subscription, to which the voters have not and probably never would assent? We have no hesitation in saying that the electors might vote to subscribe on any conditions

they might see proper to annex, and that the company can only receive it on the terms prescribed by the vote."

What is said in the case cited applies here. The city only agreed to pay the bonds on certain conditions therein prescribed, which it had the right to impose, and so long as these conditions have not been performed no liability exists.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*